**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GARDEN STATE LIFE INSURANCE
COMPANY,**                                                                                              **PLAINTIFF**

**v.**                                               **CIVIL ACTION NO. 2:17-CV-103-KS-JCG**

**THE ESTATE OF JAMES R. RAINE,** *et al.*                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on Defendant Emma Raine's Motion for Partial Summary Judgment [43]. Defendant, the Estate of James R. Raine (the "Estate"), has filed its response and memorandum in support [46, 47], and Emma Raine has filed a reply [48]. Having reviewed the pleadings, the parties' submissions, the record in this matter, and the applicable law, and otherwise being fully advised in the premises, the Court finds the Motion for Partial Summary Judgment is well taken and will be **granted**.

**I.    BACKGROUND**

**A. Parties and Procedural History**

This case involves the determination of the proper party to receive the proceeds of a life insurance policy following the death of James R. Raine, who was the victim of a homicide on October 21, 2011.[1] Mr. Raine was shot to death in his home in Poplarville, Mississippi, having been shot multiple times in the forehead, chin, head and neck. [27] at ¶¶ 25, 31; [29] at ¶¶ 25, 31; [32] at ¶¶ 25, 26.   Almost six years later, on July 6, 2017, Plaintiff, Garden State Life Insurance

---

[1] Garden State alleges in its Amended Complaint that James R. Raine was murdered on October 21, 2011 in his home in Pearl River County. [27] at ¶ 12. This fact is admitted by both Defendants. [29] at ¶ 12; [32] at ¶ 12. The coroner ruled the death a homicide, as did the Pearl River County Sheriff's Department. [27] at ¶ 31-32; [29] at ¶¶ 31-32; [32] at ¶26.

1

Company ("Garden State"), filed a Complaint for Interpleader and for Declaratory Judgment [1], which was later amended [27]. The basis of the interpleader action was Garden State's assertion that there are competing claims for the life insurance proceeds. [27 at ¶ 7].

Both Emma Raine and the Estate of James R. Raine have answered the Amended Complaint [29, 32]. The United States also became a party to the action by filing an unopposed motion to intervene, which was granted, and a cross-claim against Emma Raine, seeking to recover fines and restitution pursuant to a criminal conviction for bankruptcy fraud and tax fraud in the amount of $94,107.01 should Emma Raine be entitled to the proceeds of the insurance policy [17, 21]. Emma Raine concedes liability to the IRS should she prevail on summary judgment. [43 at p. 1]. Emma Raine is currently incarcerated in the Louisiana Correctional Institute for Women in St. Gabriel, Louisiana, having been convicted of second degree murder in the death of her second husband, Ernest Smith, in August 2016. [4] #1; [5] #3; [27], Ex. M.

Discovery closed on July 2, 2018, and Emma Raine has now filed a Motion for Partial Summary Judgment as to the claim in the interpleader action concerning which Defendant is entitled to the proceeds of the Policy.

### B. Nature of the Dispute

Garden State issued Policy No. 00411074 to, and covering the life of, James R. Raine, the Decedent, as the Owner and the Insured, on August 11, 2010, with the policy being in full force and effect on the date of James R. Raine's death (the "Policy"). [27] at ¶ 24; [29] at ¶ 24; [32] at ¶ 24. There is no dispute that Emma Raine is listed as the beneficiary on the Policy. [27] at ¶ 28; [29] at ¶ 28; [32] at ¶26. Emma Raine made a claim for the proceeds of the insurance on December 6, 2011. [27] at ¶ 30; [29] at ¶ 30; [32] at ¶26. Garden State thereafter began an investigation and review. *Id.*

The dispute as to entitlement to the proceeds arose due to allegations set forth in the April 2, 2013 Petition to Open Intestate Estate filed in the Chancery Court of Pearl River County, Mississippi, wherein the Petitioners alleged that at the time of his death, James R. Raine was married to Emma Raine; they had no children together, but James R. Raine had one child. [27] at ¶ 49, Ex. U at ¶ III; [29] at ¶ 49; [32] at ¶ 31. The Petitioners further alleged that Emma Raine is a suspect in the shooting death of James R. Raine and that she brought about his death. [27 at ¶¶ 7, 50], Ex. U at ¶ VI. Finally, the Petitioners stated they had reason to believe that there may be life insurance policies applicable to the decedent and that they intended to file a claim on behalf of the Estate. [27] at ¶ 51, Ex. U at ¶ VII; [29] at ¶ 51; [32] at ¶ 31.[2]

By interpleading the funds, Garden State sought "to avoid unilaterally paying proceeds to any person or any entity not clearly entitled to said proceeds or who may be determined to not be entitled to said proceeds, particularly with the aforedescribed Competing Claims." [27] at ¶ 47.

## II. DISCUSSION

According to the terms of the Policy, "[a]ny proceeds payable because of the death of the Insured will be paid to the Beneficiary. Unless changed as provided in this Policy, the Beneficiary will be designated in the application." [27], Ex. A. at p. 9/20. Again, there is no dispute that Emma Raine is the Beneficiary under the terms of the Policy. The Policy goes on to provide that "[i]f the interest of all designated Beneficiaries has terminated, any proceeds will be paid to the Owner or his estate or successors." *Id*. Garden State asserted, and the Estate argues, that the Beneficiary's interest could terminate under what is known as the Slayer Statute,[3] which provides as follows:

---

[2] It is uncertain whether the Estate ever made a claim to Garden State since the time the Petition was filed in 2013, as there is no evidence in the record to that effect.

> If any person willfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated.

MISS. CODE ANN. § 91-1-25. In this diversity action, the governing law on substantive matters is Mississippi law, and the Supreme Court of Mississippi has held that a beneficiary who has willfully taken the life of an insured cannot recover the proceeds of a life insurance policy. *See Dill v. Southern Farm Bureau Life Ins. Co.*, 797 So. 2d 858, 864 (citing *Gholson v. Smith*, 48 So. 2d 603 (1950)); *see also Davis v. Cont'l Cas. Co.*, 560 F. Supp. 723, 728 (N.D. Miss. 1983) (also citing to *Gholson v. Smith*).

### A. **Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Am. Gen. Life Ins. Co. v. Hannah*, No. 1:12-cv-00087, 2014 WL 1413540 at *9 (N.D. Miss. Apr. 11, 2014) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex,* 477 U.S. at 321. Although this Court considers

---

[3] *See, generally, Estate of Armstrong v. Armstrong*, 170 F.3d 510, 513-514 (Miss. 2015).

the evidence in the light most favorable to the nonmoving party, *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990), conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

### B. The Burdens of Proof and the Evidence

In order to terminate Emma Raine's interest in the proceeds, the Estate bears the burden of proving by a preponderance of the evidence that Emma Raine willfully caused or procured the death of James R. Raine. *Dill*, 797 So. 2d at 866; *Cf. Davis*, 560 F. Supp. at 728. Emma Raine has moved for summary judgment on the grounds that the Estate of James R. Raine cannot prove an essential element of its claim and as a matter of law it is entitled to summary judgment, finding her the rightful beneficiary under the Policy. In particular, Emma Raine claims that the Estate cannot establish that she willfully caused or brought about the death of James R. Raine.

Because the Estate bears the burden of proof at trial to show that Emma Raine willfully caused or procured the death of James R. Raine, Emma Raine is not required to "produce evidence negating the existence of a genuine issue of fact, but only to "point out the absence of evidence supporting the nonmoving party's case." *Skotak*, 953 F.2d at 913. She has satisfied that burden. Emma Raine contends that there has simply been no evidence adduced in discovery that the Estate can use to support its position—no witnesses named, no expert, no copy or description of any document, and there has been no written discovery propounded, no subpoenas issued, and no depositions taken.

In response, the Estate submitted a response and memorandum [46, 47] and contends that a genuine issue of material fact exists because "[g]ood and sufficient evidence exists which would tend to prove Emma's involvement in the death of James R. Raine. . . ." [46] at p. 2.

5

However, the evidentiary materials submitted by the Estate in response to the summary judgment motion are insufficient to demonstrate the existence of a genuine issue of material fact.

In its memorandum, the Estate claims that it can show by a preponderance of the evidence that Emma Raine willfully caused or procured James R. Raine's death. It claims that it will call Emma Raine as an adverse witness and recites what the Estate "expects" Emma Raine will admit to. The Estate also asserts that Angela Fowler and Enoch Raine will testify from their personal knowledge about the decedent's and Emma Raine's relationship and "statements that have been made by Emma and her actions." [47] at p. 2. The Estate states that the Court can take judicial notice of the fact that Emma Raine has been convicted for the murder of her second husband and "previously collected on an insurance policy she knew she was not entitled to receive." There is no citation to any record evidence—no depositions, no written discovery responses or anything of the sort. These vague assertions are not competent summary judgment evidence. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (noting that unsubstantiated assertions are not competent summary judgment evidence and that "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim).[4]

Additionally in its memorandum, the Estate sets forth the following three facts that are uncontested in the pleadings, which the Estate contends point to the involvement of Emma Raine in the death of James R. Raine: (1) James R. Raine was shot and killed at his home on October 21, 2011; (2) Emma's second husband, Ernest J. Smith, Jr. was shot and killed at his home; and (3) Emma Raine was subsequently convicted of the murder of her husband number two, Ernest J. Smith, Jr., but not before she collected a portion of $800,000 life insurance proceeds from

---

[4] Also, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak*, 953 F.2d 915-916 n. 7.

Primerica. [47] at p. 2 (citing to Garden State's Amended Complaint and Answers of the various parties). However, these facts, aside from being less than tenuous in proving that Emma Raine caused the death of James R. Raine, are an insufficient response to a motion for summary judgment because "[a] party opposing summary judgment may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas*, 136 F.3d at 458 (citing *Liberty Lobby*, 477 U.S. at 255-57)).

The only evidence the Estate submitted in response to the Motion for Partial Summary Judgment is an affidavit from Angela Fowler, James R. Raine's sister. [46] at Ex. A. In her affidavit, Ms. Fowler avers that she is familiar with Emma Raine as her sister-in-law and that Ms. Fowler had the opportunity to observe their relationship and engage in conversations with each of them. *See id*. Ms. Fowler also states that Emma Raine was bossy and tried to isolate James R. Raine from his family. *See id.* She states that Emma Raine was not a loving wife and recounts other observations that can best be summarized as Emma Raine acting indifferently when "her little dog was licking James [sic] blood off the floor" and making inappropriate comments to James' mother the day after his death. *Id.*

Ms. Fowler further states that she knows Emma Raine owned a gun and that James had taught them both how to shoot. *Id.* Finally, Ms. Fowler swears that she visited the house where James was killed the day after the shooting and "did not see anything that looked like the house had been broken into;" nothing was missing; valuables were there; there were no signs of burglary; and it "appeared that he was killed in his sleep on the bed and there was no sign of a struggle." *Id.*

7

Examining the affidavit closely, the Court finds that it falls woefully short of providing any evidence that would tend to prove by a preponderance of the evidence, or even raise an issue of fact, that Emma Raine actually caused or procured the death of James R. Raine, much less willfully. This is not evidence such that, if it were introduced at trial, it would suffice to prevent a directed verdict against the Estate. *See Celotex,* 477 U.S. at 321. Ms. Fowler provides no personal knowledge of any facts that tie Emma Raine to James R. Raines' death either by direct or circumstantial evidence.

The Estate argues that summary judgment is not warranted because the evidence against Emma Raine is circumstantial just as the evidence was against Bryan Ellis Dill in the case of *Dill v. Southern Farm Bureau Life Insurance Co., supra*. However, while it is true that Bryan Dill's wife (Liz) had been murdered, just as James R. Raine was, the scintilla of evidence in this case is quite distinguishable from the mountain evidence against Bryan Dill. *See* 797 So. 2d at 859.[5] Most notably, while Bryan Dill was not charged criminally in his wife's murder, just as Emma Raine has not, there were two men in *Dill* (the Baldwin brothers) who *were* convicted of the rape and murder of Dill's wife. *See id*. There was a substantial amount of evidence regarding the events of the night she was murdered, which included testimony that Bryan was having an affair and his wife was unhappy about it; Bryan spoke with the Baldwin brothers at a gathering around midnight and again at 2:30 a.m. the night of the murder. *Id*. at 860. Just that evidence alone is significantly more than the evidence in this case. While it may be suspiciously coincidental that Emma Raine's second husband was shot and killed, that she was convicted for her role in that murder, and that she collected life insurance money, without more, the Estate has nothing more than mere speculation at this point.

---

[5] In the *Dill* case, there was a complete trial during which testimony was received, and the trial court found all of the direct and circumstantial evidence "overwhelming." 797 So. 2d at 864

Finally, the Estate claims that the only witnesses likely to have discoverable information about the circumstances surrounding James R. Raine's death are his family and law enforcement officials, but because the case is open and still under investigation, such information is not discoverable. [47] at pp. 3-4. The Estate submitted no other affidavits from family or law enforcement. There is nothing in the record showing that the investigation is still ongoing, nor is there any evidence in the record that any arrests have been made in the almost seven years since the homicide. If there are individuals who are capable of testifying from their own personal knowledge, as the Estate claims on Page 4 of its memorandum, this was the time to present that testimony in the form of affidavits even if discovery from their own witnesses was deemed unnecessary. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477, U.S. at 322. The Estate has failed to make a sufficient showing and did not seek relief under Federal Rule of Civil Procedure 56(d). Accordingly, summary judgment is warranted.

III.  **CONCLUSION**

Based on the foregoing, the Court finds that Emma Raine is entitled to summary judgment on the issue of entitlement to the proceeds of the life insurance policy issued by Garden State. Because she is undisputedly listed as the beneficiary on the Policy and because the Estate has failed to create a genuine issue of material fact that her interest has been terminated by means of the Slayer Statute, Emma Raine's Motion for Partial Summary Judgment is hereby **granted** and judgment shall be entered in her favor.

Again, as noted *supra*, Emma Raine has conceded liability to the IRS should she prevail. Judgment having been determined in her favor, the United States is urged to file its own dispositive motion on its cross-claim. Once all claims are resolved, a separate final judgment will be entered under Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this 25th day of September, 2018.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE